UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
HENGTONG SHIPPING DEVELOPMENT (HK)  :
CO. LTD.,                           :
                                    :
                    Plaintiff,      :     08 Civ. 5592 (AKH)
                                    :
        - against -                 :     ECF CASE
                                    :
THAN TINH CORP. d/b/a EROS EXPRESS CO. d/b/a :
EROS EXPRESS & TRADING CO.,         :
                                    :
                    Defendant.      :
------------------------------------------------------------------X

## AMENDED VERIFIED COMPLAINT

Plaintiff, HENGTONG SHIPPING DEVELOPMENT (HK) CO. LTD., (hereinafter referred to as "Plaintiff"), by and through its attorneys, Lennon, Murphy & Lennon, LLC, as and for its Amended Verified Complaint against the Defendant, THAN TINH CORP. d/b/a EROS EXPRESS CO. d/b/a EROS EXPRESS & TRADING CO., (hereinafter referred to as "Defendant") alleges, upon information and belief, as follows:

1.  This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333. Jurisdiction over this matter is also present pursuant to the Federal Arbitration Act, 9 United States Code § 1 *et seq.*, and this Court's federal question jurisdiction, 28 United States Code § 1331.

2.  At all times material to this action, Plaintiff was, and still is, a foreign corporation, or other business entity organized and existing under foreign law with a principal place of business in Hong Kong.

3. Upon information and belief, Defendant was, and still is, a foreign corporation, or other business entity organized and existing under foreign law with a principal place of business in Vietnam.

4. By a charter party entered into on April 25, 2008, Plaintiff voyage chartered to Defendant the M/V SUN LUCKY (hereafter the "Vessel") for the carriage of 31,500-33,500 metric tons of coal in bulk from Campha, Vietnam to Guangzhou, China. Clause 6 of the charter party provided that the laycan, *i.e.*, the period within which the ship was required to arrive at the load port, was between May 2, 2008 and May 5, 2008. *See Fixture Note attached as Exhibit "1."*

5. On May 5, 2008 Plaintiff advised the Defendant that the Vessel would arrive late. Plaintiff, therefore, requested an extension until May 10, 2008 to deliver the Vessel into Defendant's service. Defendant agreed to this extension in consideration for Plaintiff's agreement to discount total freight charges by $10,000.00.

6. The Vessel arrived at the load port on May 7, 2008. The Vessel's captain issued Notice of Readiness at 0500 hours and, in so doing, announced that the Vessel was ready in all respects to receive Defendant's cargo.

7. Plaintiff timely delivered the Vessel into Defendant's service at 0500 hours on May 7, 2008. As such, Plaintiff duly performed its obligations under the parties' contract.

8. After Plaintiff tendered the Vessel at the load port, Defendant failed to load any cargo onto the Vessel. Consequently, the Vessel sat empty and idle at the load port waiting for Defendant to load a cargo of bulk coal pursuant to the charter party.

9. One week later, on May 14, 2008, Defendant breached the charter party. Specifically, Defendant advised Plaintiff in writing that it would not be loading any cargo, and

that it would not be performing its obligations under the contract. In this regard, Defendant sent a message to Plaintiff that stated as follows:

DEAR SIR:

DUE TO NOW [sic] REGULATION AND LAW FROM VIETNAM COAL GROUP, CARGO STEM FOR MV SUN LUCKY WAS CANCELLED AT THE LAST MINUTE. WE REGRET TO SAY THAT WE HAVE TO CANCEL THE SUBJECT VESSEL FOR THIS PRESENT VOYAGE.

YOURS SINCERELY
CUONG NGUYEN, THAN TINH CORPORATION (EROSEXPRESS CORP.)

10. Despite the fact that Plaintiff performed its obligations under the charter party by providing the Vessel to Defendant at the load port, Defendant breached the charter party because it was unwilling and/or unable to provide the Vessel with any cargo as it was required to do. Defendant was not legally justified to refuse to perform its obligations under the charter party.

11. As explained in Paragraph 9 above, Defendant offered the explanation that it could not load a cargo onto the Vessel due to a new regulation and law from the Vietnam Coal Group. Defendant, however, has never provided particulars of any such regulation and/or law. Further, Plaintiff has researched the issue in Vietnam and is unaware of any new regulation and/or law that would have excused Defendant's performance under the charter party.

12. But for Defendant's breach, the charter party between Plaintiff and Defendant would have taken twenty-two days to fully perform, i.e., from May 2, 2008 to May 24, 2008.

13. After Defendant breached the charter party by abandoning the empty Vessel at the load port of Campha, Vietnam, Plaintiff immediately sought new employment for the Vessel. Plaintiff did so in order to mitigate the damages that it suffered as a result of Defendant's breach.

14. After Defendant's breach of contract, Plaintiff promptly found alternative employment for the Vessel with a new charterer. Specifically, on May 20, 2008 Plaintiff

contracted with a non-party for the carriage of about 32,000 metric tons of iron ore from India to China, under which charter party the Vessel was required to arrive in India for loading before June 5, 2008.

15. The alternative employment for the Vessel, *i.e.*, the charter party dated May 20, 2008, was at a lower rate than would have been earned under the charter party between Plaintiff and Defendant. That is, Plaintiff has earned less income than it would have earned had Defendant fully performed the charter party between Plaintiff and Defendant.

16. As a result of Defendant's breach of contract, Plaintiff has suffered damages. More precisely, Defendant is liable to Plaintiff for the eighteen-day period from May 2, 2008, *i.e.*, the date when the Vessel departed for Vietnam to load pursuant to Defendant's instructions, to May 20, 2008, *i.e.* the date when Plaintiff was forced to enter into a less profitable substitute charter party with a different charterer. In respect of this eighteen-day period, for which Plaintiff had no substitute charter, Plaintiff is entitled to payment from Defendant at the rate of $21,500 per day, for a total of $387,000. The daily rate of $21,500 is the rate that Plaintiff would have earned had Defendant properly performed the charter party.

17. Plaintiff is also entitled to collect damages for the four day period where the original (higher earning) charter with Defendant and the lower earning mitigation charter would have overlapped. Pursuant to Paragraph 15 above, the substitute voyage was at a lower daily rate than the one that Defendant agreed to pay, *i.e.* $17,000 as compared to $21,500. As a result, the rate differential is $4,500 per day. Consequently, for the four-day time period from May 20, 2008, *i.e.*, the date that Plaintiff chartered the Vessel to a new charterer, to May 24, 2008, *i.e.*, the date on which Defendant's voyage would have concluded but for the breach, Plaintiff suffered damages in the amount of is $18,000.00.

18. Pursuant to Paragraphs 16 and 17 above, and after crediting Defendant the $10,000 discount discussed in Paragraph 5 above, Plaintiff has suffered damages in the total principal amount of $405,000 as a result of Defendant's breach of the charter party contract.

19. Pursuant to the charter party all disputes must to be submitted to arbitration in Hong Kong with English Law to apply. Plaintiff is preparing to commence arbitration against Defendant. Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English Law. As best as can now be estimated, Plaintiff expects to recover the following amounts in the London arbitration in respect of its claim under the charter party:

| | | |
|---|---|---|
| A. | Principal claim for wrongful cancellation: | $405,000.00; |
| B. | Interest on principal claim at 7% compounded quarterly for three years: | $60,297.12; |
| C. | Attorneys' fees and costs of arbitration: | $50,000.00; |
| **Total:** | | **$515,297.12.** |

20. The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure. *See Murphy Affidavit attached as Exhibit Two.* Upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of one or more garnishees which are believed to be due and owing to the Defendant.

21. The Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any assets of the Defendant held by

the aforesaid garnishee for the purpose of obtaining personal jurisdiction over the Defendant, and to secure the Plaintiff's claims as described above.

**WHEREFORE**, Plaintiff prays:

A.  That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Amended Verified Complaint;

B.  That the Court retain jurisdiction to compel the Defendant to arbitrate, if necessary, in accordance with the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*;

C.  That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds held by any garnishee within the District which are due and owing to the Defendant, in the amount of **$515,297.12** calculated to date to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Amended Complaint;

D.  That this Court recognize and confirm any arbitration award(s) or judgment(s) rendered on the claims set forth herein as a Judgment of this Court.

E.  That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

F.  That this Court award Plaintiff its attorney's fees and costs of this action; and

G.  That the Plaintiff have such other, further and different relief as the Court may deem just and proper.

Dated: June 26, 2008
       Southport, CT

The Plaintiff,
HENGTONG SHIPPING DEVELOPMENT (HK) CO LTD.,

By: /s/ Charles E. Murphy
Charles E. Murphy
Anne C. LeVasseur
LENNON, MURPHY & LENNON, LLC
The GrayBar Building
420 Lexington Ave., Suite 300
New York, NY 10170
(212) 490-6050 – phone
(212) 490-6070 – fax
cem@lenmur.com
acl@lenmur.com

## ATTORNEY'S VERIFICATION

State of Connecticut    )
                           )   ss.:   Southport
County of Fairfield    )

1. My name is Charles E. Murphy.

2. I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3. I am an attorney in the firm of Lennon, Murphy & Lennon, LLC, attorneys for the Plaintiff.

4. I have read the foregoing Amended Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5. The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6. The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

7. I am authorized to make this Verification on behalf of the Plaintiff.

Dated:    June 26, 2008
             Southport, CT

*Charles E. Murphy* (signature)
Charles E. Murphy

# EXHIBIT 1

FIXTURE NOTE

NO : 001/EROS/COAL                                         DATE: 25TH APRIL 2008

STRICTLY PRIVATE & CONFIDENTIAL
ALL NEGOTIATION AND SUBSEQUENT FIXTURE OF THIS CHARTER PARTY SHALL
NOT BE REPORTED NOR DECLARED TO OTHER PARTIES, OTHER THAN MANAGER
AND CHARTERER AS MENTIONED BELOW.

1. OWS : Hengtong Shipping Development (HK) Co.,

2. CHARTERER : THAN TINH CORPORATION VIETNAM

3. VESSEL

M.V. SUN LUCKY
Panama flag
call sign:3ELE7,Class KRS, built Jun 1974 Japan, sdbc
DWT/DWCC/GRT/NRT : 34792mt/33900mt/20422/11824 on 10.67m ssw.
Spd 10.5kn L 160.0/B23.4/D15.0m
Gr.43655cbm( 1/6407,2/9684,3/7176,4/9855 & 5/9531)/Ba 40966cbm.
5H/5H, Hatch size: 1/14.0 x 10.5m, 2/16.4 x 13.5m, 3/12.6 x 13.5m, 4/16.4 x 13.5m, 5/16.4 x 13.5m.
Daily consumpt: FO 22.0mt/MGO 2.2mt
Gearless, Main: 12000HP
ADA

4. CARGO & QUANTITY
   31500 - 33500 CHARTERER OPTION BULK COAL

5. LOADING / DISCHARGING PORTS:

   1SAB 1SP CAMPHA VIETNAM

   1SAB 1SP GUANGZHOU CHINA

6. LAYCAN: 2-5 MAY 2008

7. FREIGHT: USD13.00 PMT ON FIOST BSS 1/1

8. PAYMENT OF FREIGHT
   FRT PAYABLE 100 PCT LESS COMM ONLY W/IN 2 BDAYS BUT ALWAYS BBB AFTER
   S/R BS L MARKED "FRT PAYABLE AS PER C/P" OR " FRT PPD" IN STRICT
   CONFORMITYWITH M.R. IF FRT PREPAID BSL REQUIRED , THEN SAME TO BE
   RELEASED AGAINST OWNER BANK CONFIRM FULL RECEIPT OF OCEAN FREIGHT.
   FRT TO BE DEEMED EARNED UPON COMPLETING OF LOADING DISCOUNTLESS AND
   NON-RETURNABLE WEHTHER VESSEL AND/OR CARGO LOST OR NOT LOST

9. LOADING/DISCHARGING RATE
   LOADING : 7000 MTS PWWD OF 24 CONCS HRS SSHINC
   DISCH   : 10000 MTS PWWD OF 24 CONCS HRS SSHINC

10. DEMURRAGE/DESPATCH.
A) USD 16 000 PER DAY PRO RATA FD BENDS

9) LAYTIME NON-REVERSIBLE.
C) DEMURRAGE IF ANY TO BE SETTLED WIN 14 BDAYS AFTER COMPLETION OF DISCHARGING OPS AND AFTER RCVG TIME SHEETS ANALYSIS SUPPORTED BY ALL RELEVANT DOCTS SUCH AS NOR/SOF SIGNED /STAMPED BY MASTER/ AGENTS BENDS.

11. AGENTS.
OWNER AGENTS BENDS

12. DUES AND A/P: ANY DUES ON VESSEL/FREIGHT TO BE FOR OWNERS' ACCOUNT SAME ON CARGO TO BE FOR CHTRS ACCOUNT SUCH AS ANY TAXES/DUES/WHARFAGES ETC.

13. ARBITRATION IF ANY TO BE SETTLED IN HONGKONG, ENGLISH LAW TO APPLY.

14. NOR TO BE TENDERED BENDS UPON VSL'S ARRIVAL W.W.W.W AND OWNER TO ALLOW TURN TIME BENDS 12HRS UNLESS SOONER
COMMENCE LAYTIME TO COUNT UNTILL COMPLETION OF LOADING/DISCHARGING OPERATION

15. OWNERS TO ALLOW CHTRS TO DISCH CARGOES W/O PRESENTATION OF ORIGINAL B/LS BY PROVIDING WTIH LOI IN ACCORDANCE WITH OWNERS P&I CLUB FORM AND WORDING BEFORE DISCHARGING BUT RELEASE OF CARGO ALWAYS AGAINST ORIGINAL BILL OF LADINGS OR LOI SIGNED BY SHIPPER AND RECEIVERS

16. HATCHES ALWAYS PERFECT WORKING CONDITION AT ALL TIMES DAY AND NIGHT. MASTER TO BE PROVIDE SUFFICIENT POWER TO DRIVE ALL GEARS DAY AND NIGHT AND SUFFICIENT LIGHT EVEN DURING EXCEPTED PERIOD LAYTIME SHALL CEASE TO COUNT AS USED ON COMPLETION OF LOADING OF THE VESSEL

17. 3.75% TTL ON F/D/D (INCL 2.5% ADDCOMM + 1.25% FOR CAPT WOO)

18. ALL OTHER TERMS AND CONDITIONS NOT MENTIONED HEREIN ARE SUBJECT TO GENCON CHARTER PARTY REVISED IN 1994

19. WEIGHT TO BE AS PER SHIPPERS DECLARATION AND TO BE DETERMINED BY SGS OR EQUIVALENT DRAFT SURVEY REPORT BENDS FR CHRTRS ACCT BENDS

20. FREE EXPNS DUE TO VSL'S AGE/CLASS/FLAG/OWNERSHIP - NO ANY EXTRA CONTRIBUTION

21. OWS / VSL / MASTER ARE NOT RESPONSIBLE FR ANY SHORTAGE CLAIM A/O WHATSOEVER CLAIM REGARDING DIFFERENCE IN TOTAL GROSS / NET WEIGHT A/O DISCREPANCY BETWEEN CHRTRS / SHIPPERS AND RECEIVERS FIGURES

22. SINCE VSL IS GRLESS CGO TO BE LOADED / DISCHARGED BY SHORECRANES/FLOATING CRANES AND/OR CONVEYOR EQUIPMENT BENDS AND COST OF SAME TO BE FR CHRTRS ACT
END

CHARTERERS

# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
HENGTONG SHIPPING DEVELOPMENT (HK) :
CO. LTD.,
:
                  Plaintiff,                 :        08 Civ. 5592 (AKH)

    - against -                                 :        ECF CASE

THAN TINH CORP. d/b/a EROS EXPRESS CO. d/b/a :
EROS EXPRESS & TRADING CO.,
:
                  Defendant.               :
-----------------------------------------------------------------X

### AFFIDAVIT IN SUPPORT OF PRAYER FOR MARITIME ATTACHMENT

State of Connecticut  )
                         )   ss: Town of Southport
County of Fairfield   )

Charles E. Murphy, being duly sworn, deposes and says:

1.     I am a member of the Bar of this Court and represent the Plaintiff herein. I am familiar with the facts of this case and make this Affidavit in support of Plaintiff's prayer for the issuance of a Writ of Maritime Attachment and Garnishment, pursuant to Rule B of the Supplemental Admiralty Rules of the Federal Rules of Civil Procedure.

### DEFENDANT IS NOT PRESENT IN THE DISTRICT

2.     I have attempted to locate the Defendant, THAN TINH CORP. d/b/a EROS EXPRESS CO. d/b/a EROS EXPRESS & TRADING CO., within this District. As part of my investigation to locate the Defendant within this District, I checked the telephone company information directory, as well as the white and yellow pages for New York listed on the Internet or World Wide Web, and did not find any listing for the Defendant. I also performed a Google

search on the Internet. Finally, I checked the New York State Department of Corporations' online database which showed no listings or registration for the Defendant.

3. I submit based on the foregoing that the Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims.

4. Upon information and belief, the Defendant has, or will have during the pendency of this action, tangible and intangible property within this District and subject to the jurisdiction of this Court, held in the hands of in the hands of garnishees within this District, which are believed to be due and owing to the Defendant.

**PRAYER FOR RELIEF FOR ORDER ALLOWING SPECIAL PROCESS SERVER**

5. Plaintiff seeks an Order pursuant to Rule 4(c) of the Federal Rules of Civil Procedure, for an Order appointing Patrick F. Lennon, Kevin J. Lennon, Charles E. Murphy, Nancy Peterson or any other partner, associate, paralegal or agent of Lennon, Murphy & Lennon, LLC, or any process server employed by Gotham Process Servers, be and is hereby appointed, in addition to the United States Marshal, to serve the Process of Maritime Attachment and Garnishment and/or the Verified Complaint, together with any interrogatories, upon the garnishee(s), together with any other garnishee(s) who (based upon information developed subsequent hereto by the Plaintiff) may hold assets of, for or on account of, the Defendant.

6. Plaintiff seeks to serve the prayed for Process of Maritime Attachment and Garnishment with all deliberate speed so that it may be fully protected against the potential of being unable to satisfy a judgment/award ultimately obtained by Plaintiff and entered against the Defendant.

7. To the extent that this application for an Order appointing a special process server

with respect to this attachment and garnishment does not involve a restraint of physical property, there is no need to require that the service be effected by the Marshal as it involves simple delivery of the Process of Maritime Attachment and Garnishment to the various garnishes to be identified in the writ.

### PRAYER FOR RELIEF TO SERVE LATER IDENTIFIED GARNISHEES

8.   Plaintiff also respectfully requests that the Court grant it leave to serve any additional garnishee(s) who may, upon information and belief obtained in the course of this litigation, to be holding, or believed to be holding, property of the Defendant, within this District. Obtaining leave of Court at this time to serve any later identified garnishees will allow for prompt service of the Process of Maritime Attachment and Garnishment without the need to present to the Court amended Process seeking simply to identify other garnishee(s).

### PRAYER FOR RELIEF TO DEEM SERVICE CONTINUOUS

9.   Further, in order to avoid the need to repetitively serve the garnishees/banks, Plaintiff respectfully seeks further leave of the Court, as set out in the accompanying Ex Parte Order for Process of Maritime Attachment, for any process that is served on a garnishee to be deemed effective and continuous service of process throughout any given day on which process is served through the next day, provided that process is served the next day, to authorize service of process via facsimile or e-mail following initial *in personam* service.

Dated: June 26, 2008
       Southport, CT

Charles E. Murphy

Sworn and subscribed to before me
This 26th day of June 2008.

Notary Public/Commissioner of Superior Court

—3—